IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

UNITED STATES OF AMERICA

v.                                              CRIMINAL CASE NO. 3:21-CR-107-SA

JAMARR SMITH,
THOMAS IROKO AYODELE aka "ROKO",
and GILBERT MCTHUNEL, II                                      DEFENDANTS

ORDER

Following a four-day trial, a jury found each of the Defendants, Jamarr Smith, Thomas Ayodele, and Gilbert McThunel, guilty of conspiring to rob a United States Postal Worker in violation of 18 U.S.C. § 371 and aiding and abetting each other to commit the robbery in violation of 18 U.S.C. § 2114 (a). The jury reached its verdict on February 24, 2023. On March 1, 2023, Ayodele filed a Motion for New Trial [140] and Motion for Judgment of Acquittal [141]. The same day, McThunel filed a Motion for New Trial [ 142] and Motion for Judgment of Acquittal [143]. On March 3, 2023, Smith also filed a Motion for Judgment of Acquittal, or in the Alternative, for a New Trial [145]. After reviewing the Motions [140, 141, 142, 143, 145], record, rules, and applicable authorities, the Court is prepared to rule.

*Applicable Standard*

Under Rule 29 of the Federal Rules of Criminal Procedure, a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). "When addressing motions for acquittal, the Court reviews the evidence as well as all reasonable inferences from the evidence in the light most favorable to the verdict." *United States v. Young*, 547 F. Supp. 3d 575, 581 (N.D. Tex. 2021) (citing *United States v. Johnson*, 990 F.3d 392, 398 (5th Cir. 2021)). "Courts uphold the verdict if a sound rational trier of fact could

conclude from the evidence that the elements of the offense were established beyond a reasonable doubt." *Id*. (citing *Johnson*, 990 F.3d at 398).

Rule 33, on the other hand, provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Unlike a motion for acquittal, "in a motion for new trial, the trial court may weigh the evidence and assess the credibility of the witnesses during its consideration of the motion for new trial." *Young*, 547 F.Supp.3d at 583 (citing *United States v. Fuchs*, 467 F.3d 889, 902 (5th Cir. 2006)). In the Fifth Circuit, "it is generally accepted that a new trial ordinarily should not be granted unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict which has an adverse effect on the substantial rights of a defendant." *Id*. (citing *United States v. Wright*, 534 F.3d 770, 775 (5th Cir. 2011)) (internal citation omitted). "A defendant's substantial rights are violated if an error affects the outcome of the trial court proceedings." *Id*. (citing *United States v. Slayton*, 2019 WL 3892426, at *1 (S.D. Miss. Aug. 19, 2019)). "The trial court has broad discretion in ruling on a motion for a new trial." *Id*. (citing *Fuchs*, 467 F.3d at 909).

*Analysis*

Each Defendant filed separate Motions for Judgment of Acquittal and Motions for New Trial [140, 141, 142, 143, 145]. The Defendants present identical arguments in their Motions for Judgment of Acquittal [141, 142, 145] However, only Ayodele and McThunel make the same arguments in their Motions for New Trial [140, 143]. Smith, on the other hand, in his Motion [145] argues that the Court erred in admitting the expert testimony of Chris Moody. The Court will address each issue in turn.[1]

---

[1] The Court notes that the Defendants did not file supporting memorandums to further explain the arguments set forth in their Motions [140, 141, 142, 143, 145].

I.      *Motions for Acquittal [141, 142, 145]*

As noted above the Defendants' Motions for Judgment of Acquittal [141, 142, 145] present the same arguments: (1) that the Court erred in failing to sustain the Motion for Judgment of Acquittal at the conclusion of the Government's case in chief; (2) that the verdict of the Jury was against the overwhelming weight of evidence and verdict evinced bias and prejudice against the Defendants; and (3) that the Defendants are entitled to a Judgment of Acquittal because of the failure of the prosecution to prove its case against the Defendants beyond a reasonable doubt and the evidence is insufficient to sustain a conviction. *See* [141] at p. 1; [142] at p. 1; [145] at p. 1.

The Defendants first argue that the Court erred in failing to grant the Motion for Judgment of Acquittal at the close of the Government's case in chief. At the close of the Government's case in chief all the Defendants moved for acquittal asserting that the Government had failed to prove the elements of the crimes charged. The motion was ultimately denied. When the Government concluded its case in chief, there was an overwhelming amount of evidence before the jury including documentation obtained via a geofence warrant that placed Smith and McThunel's devices near Lake Cormorant Post Office on the day the robbery occurred; cell phone records and cell tower location data showing the Defendants not only exchanging several phone calls with one another, but also showing that they traveled from Batesville to Lake Cormorant and back to Batesville on the day of the robbery; eyewitness testimony identifying Smith at the Lake Cormorant Post Office on the day in question and around the time of the crime; video surveillance that captured the robbery as well as vehicles that were identical to those owned by Ayodele and McThunel; and testimony from witnesses who knew Ayodele—one of whom communicated with Ayodele the day of the robbery.[2] Furthermore, as the Government points out in its Response [146],

---

[2] This cuts against Ayodele's defense that he did not have his phone on the day the robbery occurred.

there was evidence of social media records that established the Defendants knew each other and appeared to be friends. Considering the testimony and exhibits that were introduced at trial and viewing the evidence in the light most favorable to the Government, the Court finds that it did not err when it denied the Defendants' motion for judgment of acquittal at the end of the Government's case in chief.

Next, the Defendants contend that their Motions for Judgment of Acquittal [141, 142, 145] should be granted because "the verdict of the of the Jury [] was against the overwhelming weight of evidence in this case and the verdict evinced bias and prejudice against the Defendant[s]." [141] at p. 1; [142] at p. 1; [145] at p. 1. As discussed above, there was an extensive amount of evidence introduced at trial, including witness testimony and exhibits, that supported the jury's guilty verdict. Therefore, the Court finds that the verdict was not against the overwhelming weight of the evidence.

Lastly, the Defendants argue that their Motions for Judgment of Acquittal [141, 142, 145] should be granted because the Government failed to prove its case beyond a reasonable doubt and "[t]he evidence is insufficient to sustain a conviction." *Id.* The Fifth Circuit has held that when reviewing the sufficiency of the evidence "the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007) (citing *United States v. Burton*, 126 F.3d 666, 669 (5th Cir. 1997)). Furthermore, the Fifth Circuit stated, "we view the evidence in the light most favorable to the verdict, which will be upheld 'if a rational trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt.'" *United States v. White*, 2022 WL 71825, at *1 (5th Cir. Jan. 7, 2022) (citing *Johnson*, 990 F.3d at 398).

4

The Indictment [1] charged each of the Defendants with one count of robbery and one count of conspiracy. In order to convict the Defendants of robbery, the Government had to prove that the Defendants took mail matter, money, or property of the United States from Sylvester Cobbs; that the Defendants took such property by means of force and violence, or by means of intimidation; and that the Defendants put the life of Sylvester Cobbs in danger by the use of a dangerous weapon. To support a conviction for conspiracy under 18 U.S.C. § 371, the Government had to prove that there was an agreement between two or more persons to commit the crime of robbery, that the Defendants knew of the unlawful purpose of the agreement, and that the Defendants participated in the conspiracy voluntarily.

As stated above, as well as in the Government's Response [146], there was a compelling amount of evidence from which the jury could find each Defendant guilty beyond a reasonable doubt on both counts of the Indictment [1]. In addition to the evidence outlined above, during the trial, Sylvester Cobbs testified that the unknown assailant pulled a gun on him and beat him repeatedly before taking the registered mail bags. Cobbs testified that during the attack he thought the assailant was going to "beat his brains out." The evidence presented at trial also established a relationship between all of the Defendants, including phone records showing several calls between the Defendants during the day and time of the robbery. Furthermore, vehicles identical to Ayodele's and McThunel's were identified in the video footage, and information obtained via the geofence warrant, subsequent Google warrants, and cell tower location data showed all three of the Defendants' devices near the Lake Cormorant Post Office around the time of the robbery. As the Government points out in its Response [146], Lake Cormorant, Mississippi is located in a rural part of the state with little to no attractions that would draw an outsider to the town. The Court

finds that there was a compelling amount of evidence from which the jury could find each Defendant guilty beyond a reasonable doubt on both counts of the Indictment [1].

As noted above, "when addressing motions for acquittal, the Court reviews the evidence as well as all reasonable inferences from the evidence in the light most favorable to the verdict." *United States v. Young*, 547 F. Supp. 3d 575, 581 (N.D. Tex. 2021) (citing *Johnson*, 990 F.3d at 398.) The testimony and exhibits introduced at trial were sufficient to support the jury's guilty verdict. The Court finds that the grounds on which the Defendants seek acquittal are insufficient and the jury's verdict should not be disturbed. The Motions [141, 142, 145] are hereby DENIED.

## II.    *Motions for New Trial [140, 143]*

As noted above, Ayodele and McThunel make the same arguments in their Motions for New Trial [140, 143]. Ayodele and McThunel move for a new trial on three grounds: (1) the verdict is contrary to evidence and without evidence to support a guilty verdict; (2) the verdict is decidedly and strongly against the weight of the evidence and insufficient to sustain a conviction; and (3) the verdict does not support the interest of justice. *See* [140, 143].

The Court notes that the grounds in which Ayodele and McThunel seek a new trial are similar to their arguments in favor of an acquittal. In its analysis above, the Court has already concluded that the Defendants' arguments in favor of acquittal were insufficient. The Court sees no need to repeat its analysis. The Motions for New Trial [140, 143] are DENIED.

## III.    *Expert Testimony*

Smith makes an additional argument to support his Motion [145], specifically that the Court erred in admitting the expert testimony of Chris Moody in the field of cell site and Google data and location analysis.

As an initial matter, the Court notes that Smith did not file a pre-trial *Daubert* objection even though, according to the Government's Response [146] and subsequent documents attached, the Government notified all of the Defendants that Moody would be the designated expert on March 10, 2022—almost a year before the trial took place. However, during trial, the Defendants objected to Moody testifying as an expert. Thereafter, *voir dire* was conducted, and the Court ultimately denied the objection.

Smith contends that Moody's testimony was neither relevant nor reliable and the Government failed to establish Moody's qualifications as an expert under the basic requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 113 S. Ct. 2786 (1993). *Daubert* requires courts to determine whether expert testimony is both relevant and reliable. *Id.* at 592-93. Relevancy requires that the evidence or testimony "assist the trier of fact to understand the evidence or determine a fact in issue" and reliability requires a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can properly be applied to the facts in issue." *Id. Daubert* sets forth a non-exhaustive list of factors to help evaluate reliability. *Daubert*, 509 U.S. at 593-595. This inquiry includes: (1) whether the theory or technique can be tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) the known error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has been generally accepted in the scientific community. *Id.* These factors form the basis of Smith's arguments in his Motion [145]. Smith specifically argues that Moody's testimony should not have been admitted because he was unable to provide information about relevant training he received about Google location data, any studies that supported the reliability of the data, any peer reviewed publications discussing this technology or validating its reliability, an error rate or whether an error

rate had been determined, or if the technology was widely accepted in the greater scientific community.

In *United States v. Schaffer*, the Fifth Circuit found that the district court did not err in admitting the expert testimony of the agent in historical cell site analysis. 439 F. App'x 344, 347 (5th Cir. 2011). The Fifth Circuit held:

> Testimony established that the field is neither untested nor unestablished. Agent Creasey detailed his extensive knowledge and experience in the field. According to Agent Creasey, he used the technique, without error, on at least 1000 occasions, and the FBI had been successful at least 1000 times. Agent Creasey taught courses on the subject. Furthermore, individuals who Agent Creasey taught and supervised had used their historical cell site analysis training to provide expert testimony, and the technique has been accepted by approximately [sic] federal courts as a field of expertise. *See United States v. Weathers*, 169 F.3d 336, 339 (6th Cir. 1999) (allowing expert testimony based on cell site analysis).

*Id.*

To support its holding, the Fifth Circuit concluded that "the *Daubert* factors are meant to be helpful and not definitive, and the Supreme Court has recognized that all five factors *do not 'necessarily apply in every instance in which the reliability of scientific testimony is challenged.'*" *Id.* at 346 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999)) (emphasis added).

The Court notes, as pointed out by the Government, that the Superior Court of Delaware has allowed expert testimony as to Google location data. *State v. Pierce*, 222 A.3d 582, 589 (Del. Super. Ct. 2019). There, the court found that an expert's testimony about Google location data met both the relevancy and reliability prongs pursuant to *Daubert*. *Id.* at 588. Importantly, the court held that the testimony satisfied all the reliability factors under *Daubert*. *Id.* at 592.

As emphasized in the Government's Response [146] and outlined in Moody's Curriculum Vitae, Moody has received extensive training and experience in cell site analysis. Some of Moody's experience includes several years of experience of working with geolocation technology, cell phone analysis training, and training by the FBI, private companies, and the major cell phone providers to analyze cell phone data for the purposes of locating missing people and suspected criminals. Additionally, according to the supplemental expert disclosure attached to the Government's Response [146], Moody has been accepted as an expert in two other trials in the Western District of Tennessee.

During trial, Moody provided testimony about his training and experience as well as about the location of the Defendants and their cell phones before, during, and after the robbery. Moody also testified about the information returned in the geofence warrant and provided a video animation showing the location coordinates of the Defendants' devices on the day of the robbery. Moody provided testimony about the software program he used to plot the Google GPS coordinates and about the margin of error of Google location data. During his testimony, Moody articulated that Google uses geolocation, a field he has considerable amount of training in, to locate their users. Moody also testified that he was not aware if the Google location data theory had been subjected to peer review. However, in *Kumho*, the Supreme Court held that "it might not be surprising in a particular case, for example, that a claim made by a scientific witness has not been the subject of peer review, for the particular application at issue may never previously have interested any scientist." *Kumho*, 526 U.S. at 151.

It is clear from Moody's testimony during trial and after reviewing his Curriculum Vitae that he was qualified to testify as an expert and his testimony was reliable. Although there were some *Daubert* factors that did not apply to Moody's expert testimony on Google location data, it

is clear that the *Daubert* factors are not definitive and that all of them do not apply in every situation. *See Schaffer*, 439 F. App'x at 346. (citing *Kumho*, 526 U.S. at 151). The fact that Moody was unaware of any peer review publications or the general acceptance of Google location data does not prohibit him from being qualified as an expert in the field of Google location data. As the Government points out in its Response [146], the methodology Moody used goes to the weight rather than the admissibility of his testimony. *See United States v. Morgan*, 45 F.4th 192, 201 (D.C. Cir. 2022). The Court finds that Moody's expert testimony was reliable. Furthermore, the Court finds that Moody's expert testimony was relevant to help the jury in deciding the facts at issue since it was the use of Google location data that identified the Defendants at the scene of the robbery. Moody's testimony met both prongs for scientific testimony under *Daubert*. The Court therefore finds that it did not err in allowing Moody to testify as an expert in cell site and Google data and location analysis.

*Conclusion*

For the reasons stated above, The Defendants' Motions for Judgment of Acquittal [141, 142, 145] are DENIED. The Defendants' Motions for New Trial [140, 143, 145] are DENIED.

SO ORDERED, this the 29th day of March, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE