1           UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF MISSISSIPPI
2                 OXFORD DIVISION

3

UNITED STATES OF AMERICA                    PLAINTIFF
4

5

VS.                                NO. 3:21CR107
6

7

JAMARR SMITH, THOMAS IROKO AYODELE,
8  AND GILBERT McTHUNEL, II                    DEFENDANTS

9

10

11        HEARING ON OBJECTION TO PRESENTENCE REPORT

12
         BEFORE HONORABLE SHARION AYCOCK
13          UNITED STATES DISTRICT JUDGE

14
              Oxford, Mississippi
15               June 13, 2023

16

17

18         (APPEARANCES NOTED HEREIN)

19

20

21

22
Court Reporter:     PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
23                  Federal Official Court Reporter
                    911 Jackson Avenue East
24                  Oxford, MS  38655

25

APPEARANCES:

For the Government:    ROBERT J. MIMS, Esquire
                       U.S. Attorney's Office
                       900 Jefferson Avenue
                       Oxford, MS   38655

For the Defendant
 Smith:                GOODLOE T. LEWIS, Esquire
                       Hickman, Goza & Spragins, PLLC
                       P.O. Drawer 668
                       Oxford, MS   38655-0668

For the Defendant
 Ayodele:              WILLIAM F. TRAVIS, Esquire
                       8619 Highway 51 North
                       Southaven, MS   38671

For the Defendant
 McThunel:             PAUL A. CHINICHE, Esquire
                       Chiniche Law Firm, PLLC
                       P.O. Box 1202
                       Oxford, MS   38655-1202

1    (1:30 P.M.)

2         **THE COURT:** You may call the case.

3         **COURTROOM DEPUTY:** The Court calls Case Number

4    3:21CR107, United States of America versus Jamarr Smith, Thomas

5    Iroko Ayodele, and Gilbert McThunel, II. This is a hearing on

6    objection to the presentence investigation report.

7         **THE COURT:** Thank you.

8         Robert Mims represents the government in this

9    proceeding. And I have in the courtroom Goodloe Lewis, Bill

10   Travis, and Paul Chiniche that represent these three

11   defendants.

12        Just for the record, I will say all three defendants

13   are present here in the courtroom. Counselors are at counsel

14   table. The defendants, because of space -- we don't have

15   enough room, but they're in close proximity to their attorneys.

16        So I just want to say, if there is something,

17   defendants, that you need to say to your attorneys, you just

18   give me a nod or hand, and I'll give you a break and an

19   opportunity to speak to your lawyer.

20        So there is an objection to the presentence report.

21   This objection appears in all three of the presentence reports

22   on these three defendants. So we decided that it might save

23   some time and effort if we just had one evidentiary hearing on

24   all three -- involving all three defendants on this one

25   objection.

1   I'll simply state it, that it's an objection to the
2   two-level offense enhancement pursuant to the guidelines,
3   Section 2B3.1(b)(4)(B) for physical restraint in commission of
4   the offense.  This is in Paragraph 25 of the presentence
5   report.

6   And I'm not trying to make the argument for the
7   defendants, but, essentially, it is the defendants' consistent
8   position that there was an attempt, perhaps arguably, to lock
9   the victim, Mr. Cobbs, inside the post office, but the effort
10  was unsuccessful.  And, therefore, under the guidelines, it's
11  the defendants' position that it does not constitute physical
12  restraint.

13  So who will be arguing the objection?

14  **MR. LEWIS**:  I will, Your Honor.  Goodloe Lewis.

15  And I do think the Court pretty accurately summed up
16  our -- our objection.  And I know the Court has read the
17  submission, and I'll -- I won't just regurgitate that, but I
18  would make three main points in support of our objection to
19  that enhancement.

20  And the first is that the guideline itself states that
21  you should add two levels if any person was physically
22  restrained to facilitate the commission of the offense.  And it
23  doesn't reference attempted to be.  The words "attempted to be"
24  is not in there.  The Court has to find that there was actual
25  physical restraint.  And, secondly, I was not able to find any

1    case law that recognized the applicability of this enhancement
2    for an attempted confinement.

3              So, again, I don't know if the government would argue
4    otherwise.  But I will -- Your Honor, I have the testimony of
5    Sylvester Cobbs here transcribed that I can provide to you.  I
6    didn't have it when we drafted the objection.  So it may need
7    to be placed in the record, but I'm not sure procedurally how
8    to handle this.

9              **THE COURT:**  So let me just say this.  I too have a
10   copy of the transcript of Mr. Cobbs's testimony.  So for the
11   Court it's not necessary, but if you desire to make it an
12   exhibit to your argument on the objection --

13             **MR. LEWIS:**  I think I should, Your Honor.

14             **THE COURT:**  Any objection from the government?

15             **MR. MIMS:**  No, Your Honor.

16             **THE COURT:**  And the transcript of Mr. Cobbs will be
17   received.  Is this his entire transcript or just what you think
18   are pertinent parts?

19             **MR. LEWIS:**  It's complete.

20             **THE COURT:**  Thank you.

21        (EXHIBIT NO. D-1 ADMITTED INTO EVIDENCE.)

22             **MR. LEWIS:**  Okay, Your Honor.  And I'm on page 12 of
23   that transcript, and this is Mr. Cobbs talking about what
24   happened to him.  And, again, I'm -- you know, the entire
25   transcript is in the record.  If I'm missing some crucial part

1  of the transcript that Mr. Mims wants to introduce, he can
2  certainly do so.

3       But on page 12 at the bottom, Mr. Cobbs is talking
4  about what happened.  And he says, "When he hit me the first
5  time when I was inside the holding area, I felt blood running
6  down my cheek, and it was hurting.  And then, like I said,
7  after he hit me the first time -- and then he told me to get
8  back.  I'll shoot you.  So, like I said, I stepped back.  And
9  then he was going to shut the door" -- and, again, Your Honor,
10 I will just emphasize "he was going to shut the door" -- "like
11 I stated earlier.  And I just got -- you know, I just lost it,
12 and I kicked the door back on him."  And then they, to use his
13 words, went to tussling.

14      So -- so, Your Honor, you know, I don't think the
15 facts are unclear that there was no actual confinement, that
16 there was an attempt to shut the door on Mr. Cobbs, which he
17 resisted by kicking the door back open, and then, you know,
18 tussling ensued.

19      So I would make a couple of comments -- and I guess
20 the Court has the response to objections by the probation
21 service, which I've been provided.  And I will just make a
22 couple of comments about the arguments made by the probation
23 service therein.

24      And the first is that the probation service noted that
25 this testimony was presented in court, but there was really no

1 delving into, there was no elaboration on, you know, whether

2 there was actual confinement or the length of confinement. And

3 I -- that is certainly true. And the point I would make, Your

4 Honor, is that certainly should not be held against the

5 defendants. You know, if I had known that there was a ticking

6 time bomb in the presentence report of a two-level enhancement

7 for -- you know, I would have delved into it.

8 So, you know, again, Your Honor, I would say that if

9 there's any lack of clarity in the testimony of Mr. Cobbs, I

10 would -- I would again ask the Court not to hold that against

11 the defendants. I would also state that all references to

12 Mr. Cobbs's testimony or position by the government in the

13 investigative reports, which I attached to our motion, was that

14 there was just an attempt to confine him, that there was no

15 actual successful confinement.

16 The other point that I wanted to make was -- there's a

17 reference in the response by the probation service that

18 pointing a gun -- I'll just go ahead and read it. "The victim

19 also testified he was pepper-sprayed prior to being confined,

20 and the suspect pointed a firearm at him and told him if he

21 didn't get down he would kill him. All of these efforts were

22 an effort to restrain the victim to facilitate the robbery."

23 That's at the bottom of page 19 up to the top of page 20.

24 And, Your Honor, I would -- I would only cite the

25 Fifth Circuit case of *United States v. Garcia*, which is

1   857 F.3d 708, which specifically holds -- well, let me back up
2   a little bit.  As I discussed in my objection, there is concern
3   across the country of overly generous application of the
4   confinement enhancement in situations where, you know, it's
5   just part and parcel of any -- of any robbery, the activities
6   were just common to any robbery.  Okay?

7            And so what the *Garcia* court held was this.  And I'm
8   on page -- well, I can't find it quickly, but it's there at the
9   very end.  The *Garcia* court states, "The defendants' actions in
10  the present case -- standing near a door, holding a firearm,
11  and instructing the victim to get on the ground" -- again,
12  that's essentially duplicate of what the facts are of this
13  matter -- "'simply make explicit what is implicit in all armed
14  robberies, that the victim should not leave the premises.'
15  Such conduct does not differentiate this case in any meaningful
16  way from a typical armed robbery."  And went on to hold that
17  that's -- that just doesn't support application of the
18  enhancement.

19           So final point I was going to make -- I was going to
20  make three points -- that basically what you have here is this
21  attempted confinement was just an element of the undisputed
22  tussling, fighting, wrestling that was going on, okay, in
23  conjunction with this -- this incident.  And the defendants are
24  already getting enhanced for that.  They're already getting
25  enhanced under the bodily injury -- under the bodily injury

1  enhancement earlier, and we're not objecting.

2      So -- so, again, I would suggest it's excessive --

3  it's double counting, and it's simply not supported by the

4  facts.  Thank you, Your Honor.

5      **THE COURT:**  Thank you.

6      Counselors.  Mr. Chiniche.

7      **MR. CHINICHE:**  Your Honor, I would only adopt what

8  Mr. Lewis said and add that there was a video of this entire

9  incident played at trial, admitted into evidence.  And at no

10  point in that video was there -- Mr. Cobbs locked into a

11  secured facility.  And for all of those reasons, again, we're

12  asking the Court to not add the two-level enhancement.

13      Thank you, Your Honor.

14      **THE COURT:**  Mr. Travis.

15      **MR. TRAVIS:**  If it please the Court, Your Honor, on

16  behalf of Mr. Ayodele, we join in, and we would simply adopt

17  the argument and the record that Mr. Lewis has put forward.

18      Thank you.

19      **THE COURT:**  Thank you.

20      Mr. Mims.

21      **MR. MIMS:**  Your Honor, just very briefly.  I certainly

22  almost always defer to the probation service when evaluating

23  the guidelines and application of the guidelines because the

24  probation service knows far more than I do about how to apply

25  the guidelines.  They're trained on them far more than I am.

1    They deal with them every day far more than I do.  And so I

2    really can't say -- or I can't argue this any better than the

3    probation service's write-up on the objections and the

4    probation officer's response.  I'll just simply adopt that.

5        I do want to address a couple of things very briefly.

6    First off, in regards to Mr. Chiniche's comment that we've got

7    a video from the crime and the video doesn't show the victim,

8    Sylvester Cobbs, being restrained, I would point out that the

9    mail truck blocked a portion of the crime from the camera so

10   that, when the crime first occurs, when -- when the assailant

11   confronts Mr. Cobbs to begin with, they're behind the mail

12   truck, and you can't see exactly what happens.  It's a minute

13   or two later when they're fighting and struggling that they

14   come out from behind the mail truck and you can see a little

15   bit more about the crime that occurred.  So the video is

16   inconclusive.

17       Your Honor, in addressing a few points that Mr. Lewis

18   brought up, he talked about there must be actual physical

19   restraint, there's no case law on attempt, and he believes that

20   the defendants are already getting enhanced for bodily injury,

21   and this would be double counting.

22       First of all, on the already being enhanced for bodily

23   injury, that's not double counting in this case.  That -- the

24   bodily injury enhancement, I believe, comes from the fact that

25   he was struck in the face with a gun several times, left him

1  bleeding, left a scar on his face.  That has nothing to do with
2  physical restraint.  That's the beating that the assailant gave
3  to the victim in this case.

4          I do agree that case law -- I can't find any case law
5  on attempt and whether it applies or not.  I don't know whether
6  an attempt would count or wouldn't count.  There's not really
7  any case law on that.  And the only way to figure that out is
8  to let this get appealed to the Fifth Circuit and see what they
9  say.

10          On the issue of physical restraint, though, I think
11  from reading the probation officer's response that the
12  probation service -- although they may have used the word
13  "attempt" in the initial PSR, I think the probation officer is
14  characterizing this as more of a -- of a brief, temporary
15  restraint.

16          There was a room of some sort there on the back of the
17  post office, and it appears that Mr. Cobbs was placed in that
18  room at least for some short time period, because, as Mr. Lewis
19  points out in the -- in the testimony of Mr. Cobbs, he talks
20  about the fact that "He went over to the truck.  He came back,
21  looked at me, said he was going to shut the door.  I kicked the
22  door back open," which means the door was shut however briefly.
23  And the assailant apparently turned his back, because when he
24  kicks it open, it hits him in the back.  So there is at least
25  some momentary break between trying to put him in the door and

1   then turning away.  The door is kicked open.  He was restrained

2   however briefly.

3           There's also case law that -- Fifth Circuit case law

4   on the issue is kind of sparse.  And I'm going to get to *Garcia*

5   in just a second.  There is case law from all over the country,

6   though, that both sides could take and use to argue their case.

7   There's some that would be in favor of the defendants and some

8   that would be in favor of the government.

9           There are some cases out there, as pointed out by the

10  probation service, that talk about using a gun to threaten

11  somebody.  Say, "Get on the ground and don't move."  We have

12  that here.  There is case law, I believe, that talks about

13  pepper spray being a sort of physical restraint because it

14  blinds you and keeps you from being able to react or do

15  anything.  And certainly being locked in a room or a closet

16  would be -- would be a physical restraint.  And so you do have

17  all of these factors that may be -- maybe the cumulative effect

18  of all of these factors is enough to say that Mr. Cobbs was

19  physically restrained.

20          I would point out that there's -- there's no case law

21  out there -- just like there's no case law on attempt, there's

22  no case law that talks about how long must the restraint last.

23  Must it be ten minutes?  Must it be one minute?  Must it be ten

24  seconds?  Must it be two seconds?  We don't know.  There's no

25  case law on it for either side.

1           I would point out in the *Garcia* case -- I don't

2  believe it's really applicable.  In the *Garcia* case, you had a

3  robbery inside a store.  There were three assailants.  I

4  believe they all had firearms.  They all were pointing firearms

5  at the store clerk, telling him get down -- don't run, get

6  down.  They weren't locking him in a closet or a room.  And so

7  that case is different from this one, where Mr. Cobbs was

8  physically placed inside a room of the post office, a back

9  door -- I don't know exactly what kind of room it was but

10  inside the door that he had to physically kick open.

11           So this case is a little bit different than *Garcia*.  I

12  don't disagree that *Garcia* may give the Court maybe some ideas

13  or some parameters as to how to apply the law, but I don't

14  think it's a case that you could just look at *Garcia*

15  specifically and say, well, *Garcia* applies, you know, exactly.

16           All that to be said, I understand it's a close call.

17  Unfortunately, we don't have a lot of case law to really

18  support this particular situation either way.  But I would just

19  defer to the judgment of the probation service.  It does appear

20  that Mr. Cobbs was locked up, however briefly, for a short

21  period of time, and the restraint should apply.

22           **THE COURT:**  Rebuttal?

23           **MR. LEWIS:**  Your Honor, and, again, the record speaks

24  for itself, and I do not agree with Mr. Mims's characterization

25  that there was any evidence of actual confinement even for a

1   second.  I don't.  I don't think the record supports that at
2   all.

3          But, nextly, you know, I do have a problem
4   constitutionally with the fact that apparently everybody is in
5   agreement that there's no case that says, you know, attempted
6   confinement is -- entitles the government to this enhancement;
7   that the Court should just go ahead and give it and let
8   Goodloe, Bill, and Paul brief it and see how we do in the Fifth
9   Circuit.  I don't -- I don't think the Court can do that.  And
10  so I think the Court has to follow the law.  And, again, I
11  don't think there's any law supporting the government's
12  position here.

13         Finally, let me see if I can articulate my bodily
14  injury argument a little better, and then I'll sit down.  The
15  point is that there was tussling.  Okay?  I think that if there
16  was just tussling in this case the government would have still
17  asked for the two-point enhancement for bodily injury, you
18  know, even though the victim may not have gone to the hospital
19  or just whatever.  I mean, I think the threshold for getting
20  the bodily injury, at least in my experience, enhancement is
21  pretty low.

22         And so, again, you've got a lot of stuff going on --
23  pushing, shoving, doors attempting to be slammed, kicking of
24  doors, fighting, grabbing, all of that stuff.  Your Honor, that
25  is part and parcel of the bodily injury enhancement.  That goes

1   with the bodily injury enhancement.  And, therefore, you know,

2   we're not objecting to that.  These guys are being punished for

3   that.  So that's the point that -- you know, it's just too much

4   to try to, you know, bootstrap -- try to cobble this

5   enhancement to get an additional two levels.

6           Thank you, Your Honor.

7           **THE COURT**:  To be clear, the government does not

8   intend to call any witnesses, including Mr. Cobbs?

9           **MR. MIMS**:  I do not, Your Honor.

10          **THE COURT**:  Okay.  So, Counselors, you've done an

11  excellent job arguing it and briefing it.  And in hindsight, I

12  wish I'd have asked enough questions during the trial, say you

13  tell me more about what you did behind that closed door.  So

14  I'm left with a pretty bare record here that honestly would

15  call upon all of us to speculate a little bit.

16          The government certainly is correct in its argument

17  that, based upon use of some language that Mr. Cobbs stated,

18  one could argue that door got closed for a moment, a second,

19  because he kicked it in.  Then, you know, it's like, well,

20  there's also no case law on how long does it have to be closed

21  before it constitutes restraint.

22          I'm just not comfortable applying the two-level

23  enhancement.  I think it is speculation on my part if I do so

24  trying to read between the lines of the transcript.  My gut

25  reaction, when I read the portion of the transcript on

1  pages 11, 12, and 13, is that it just wasn't enough to make me
2  comfortable in light of the fact that the transcript -- the
3  testimony of Mr. Cobbs is pretty weak on this aspect because,
4  obviously, that's not where the emphasis was at the time of
5  trial.

6         None of us, I can assume, were anticipating having to
7  deal with the two-level enhancement.  I wish there was more in
8  the record that would be more definitive one way or the other,
9  but there's just not enough in the record for the Court to find
10 that the two-level enhancement applies.  I don't know if an
11 attempt is enough, and I don't know how long one must be behind
12 a locked door to be enough.  I don't have Fifth Circuit
13 precedent that answers that question for me.

14        And I know that perhaps had Mr. Cobbs testified here
15 today and we -- all of our concentration was on, now, what
16 happened in those moments, we all would probably have more
17 definitive answer about whether or not this was constraint or
18 restraint or not.  But I don't have that today either.  So that
19 being the case, the Court is going to sustain the objection as
20 to each of the defendants.

21        Any further clarification, Mr. Mims?
22        **MR. MIMS:**  No, Your Honor.  Thank you.
23        **THE COURT:**  Any further clarification, Mr. Goodloe?
24        **MR. LEWIS:**  No, Your Honor.
25        **THE COURT:**  Okay.  And so we have sentencings I think

1    that are scheduled to begin at what time? 2:00 or 2:30?

2           **COURTROOM DEPUTY:** 3:00.

3           **THE COURT:** So we'll be in recess until we start the

4    sentencings, unless you're all here and want to go forward.

5           **MR. LEWIS:** I have no objection to going forward, Your

6    Honor.

7           **MR. TRAVIS:** Go forward as far as Mr. Ayodele.

8           **THE COURT:** Everybody comfortable with that?

9           **MR. CHINICHE:** Your Honor, I believe Mr. McThunel has

10    a family member that intended to come at 4:00. I can make a

11    phone call and find out where she is.

12           **THE COURT:** Okay.

13           **MR. CHINICHE:** But Mr. McThunel was the last of the

14    three to be sentenced anyway.

15           **THE COURT:** Okay. So, Mr. Goodloe, are you

16    comfortable proceeding with your sentencing?

17           **MR. LEWIS:** Yes.

18           **THE COURT:** So if that's the case, I'll excuse these

19    two counselors.

20           **MR. TRAVIS:** May I speak with my client briefly, Your

21    Honor?

22           **THE COURT:** Yes, you may.

23      (CONFERRING OFF THE RECORD.)

24           **MR. TRAVIS:** Briefly, if it please the Court, Your

25    Honor. Mr. Ayodele has family members who should be here in

1   about 15 or 20 minutes, and he's asked for the Court's

2   indulgence.

3           **THE COURT:**   Okay.   I'm going to take Mr. Smith first

4   then.

5           **MR. TRAVIS:**   Thank you, Your Honor.

6       (CONCLUDED AT 2:00 P.M.)

1          CERTIFICATE

2

3          I, Phyllis K. McLarty, Federal Official Realtime Court

4    Reporter, in and for the United States District Court for the

5    Northern District of Mississippi, do hereby certify that

6    pursuant to Section 753, Title 28, United States Code, that the

7    foregoing 18 pages are a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page format is in

10   conformance with the regulations of the Judicial Conference of

11   the United States.

12         Witness my hand, this 29th day of August, 2023.

13

14                   /s/ Phyllis K. McLarty
                     PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
                     Federal Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25