```
                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF MISSISSIPPI
                          OXFORD DIVISION


UNITED STATES OF AMERICA                                  PLAINTIFF


VS.                                                    NO. 3:21CR107


THOMAS IROKO AYODELE, a/k/a
"ROKO"                                                    DEFENDANT



                         SENTENCING HEARING


                  BEFORE HONORABLE SHARION AYCOCK
                     UNITED STATES DISTRICT JUDGE


                         Oxford, Mississippi
                           June 13, 2023




APPEARANCES:

For the Government:    ROBERT J. MIMS, Esquire
                       U.S. Attorney's Office
                       900 Jefferson Avenue
                       Oxford, MS  38655


For the Defendant:     WILLIAM F. TRAVIS, Esquire
                       8619 Highway 51 North
                       Southaven, MS  38671


Court Reporter:        PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
                       Federal Official Court Reporter
                       911 Jackson Avenue East
                       Oxford, MS  38655
```

1  (2:55 P.M.)

2  **THE COURT:** Okay.  You may call the case.

3  **COURTROOM DEPUTY:** The Court calls Case Number
4  3:21CR107, United States of America versus Thomas Iroko
5  Ayodele.  This is a sentencing hearing.

6  **THE COURT:** Thank you.

7  Robert Mims represents the government in this
8  proceeding.  The defendant is represented by Bill Travis.  Our
9  probation officer is Andrew Fountain.

10  Mr. Ayodele, you recall the jury trial, and in that
11  circumstance, the jury found you guilty of both Counts 1 and 2.
12  So today you are here for sentencing.  Do you understand?

13  **THE DEFENDANT:** Yes, ma'am.

14  **THE COURT:** Could I ask you to stand for me, please.
15  (DEFENDANT AND HIS COUNSEL COMPLY.)

16  **THE COURT:** So in a previous hearing this afternoon --
17  you were present -- we dealt with the objection that is stated
18  in your presentence -- that you stated to the presentence
19  report.  You heard that argument and that decision by the
20  Court; correct?

21  **THE DEFENDANT:** Yes, Your Honor.

22  **THE COURT:** Mr. Travis, does the defense -- defendant
23  have any other objections to the presentence report?

24  **MR. TRAVIS:** No, Your Honor.

25  **THE COURT:** Does the government have any objections to

1 the other parts of the presentence report?

2       **MR. MIMS:** We do not, Your Honor.

3       **THE COURT:** And that objection on restraint was
4 sustained.

5       Mr. Travis, does the defendant desire to call any
6 witnesses prior to sentencing?

7       **MR. TRAVIS:** No, Your Honor.

8       **THE COURT:** Thank you.

9       So at this time, sir, I'm going to give you an
10 opportunity to speak to the Court, matters that you want me to
11 hear and have an understanding of before we proceed for
12 sentencing. So you may speak at this time.

13       **THE DEFENDANT:** I just wanted to thank -- first of
14 all, thank you for giving me the opportunity to speak.

15       I wanted to thank my sister, Ms. Barnes, Ms. -- both
16 the Ms. Logans, and the other young lady there just come in to,
17 you know, assist me or whatnot.

18       And I just -- I wanted to say as far as the
19 accusations on me, I have never been a violent person, ever, in
20 my life other than playing football, you know.

21       Before this, two days before Mother's Day, I lost my
22 mother. And, you know, I've lost a lot of stuff, but, you
23 know, anything tangible I can -- you know, I can get that back,
24 you know, but by me losing my mother and not being able to go
25 to her funeral, that kind of hurt me, you know. You know, and

1  I wasn't -- I couldn't be there with my family, and, you know,
2  just basically, you know, that hurt me bad.
3  But other than that, you know, I will ask you to, you
4  know, have leniency on me because I'm not -- not a bad person
5  at all.  Like, I've gotten into trouble before, but I haven't
6  been in any trouble other than a simple speeding ticket.  You
7  know, I don't have any lucrative drug problem or anything like
8  that, you know.
9  I maintained a job for 15 years with the State of
10 Mississippi.  And, you know, I was just -- you know, upon these
11 accusations, I lost my job too that, you know, I only needed a
12 couple more years to retire.  But, you know, like I said,
13 that's just a job.  You know, I can get another job, you know.
14 And, basically, that's about it.
15 **THE COURT:**  Thank you, sir.
16 Mr. Mims.
17 **MR. MIMS:**  I don't intend to repeat every detail of
18 what I said earlier during Mr. Smith's sentencing.  The Court
19 has heard it and knows the Government's position.  Mr. Travis
20 was in here and knows the Government's position.
21 I would just simply point out, I hear Mr. Ayodele say
22 that he's not a violent person and not a bad person at all.  I
23 would just simply remind the Court that he actively
24 participated in a crime that involved the physical beating of
25 an approximately 65-year-old gentleman who was physically and

1 emotionally traumatized by this event.

2 You've heard and you've reviewed the testimony from
3 Mr. Cobbs at the trial. I know also at the trial you had a
4 chance to hear the 911 call where Mr. Cobbs called 911
5 immediately after the crime, and you could hear the terror in
6 his voice, if you recall that, of that 911 call.

7 Obviously, I feel very strongly about people that
8 would commit such a crime or participate in such a crime, and I
9 do believe that Mr. Ayodele deserves a -- a significant
10 sentence within the guidelines to hold him accountable for his
11 actions.

12 That's all I have, Your Honor.

13 **THE COURT:** Thank you.

14 Mr. Travis.

15 **MR. TRAVIS:** If it please the Court. Thank you, Your
16 Honor.

17 Your Honor, I know the Court has reviewed the
18 sentencing memo filed on my client's behalf, and I would
19 certainly ask the Court to consider the highlights that I've
20 tried to make; that this young man, at the age of 40 now, had a
21 criminal history category of II. However, that's based on a
22 2009 marijuana charge; during that era, a simple possession
23 charge. I'd ask the Court to mitigate the weight of that
24 that's inherent in that issue as we stand here today and the
25 countryside and its relationship to marijuana in general.

1    I would ask the Court to consider the many letters
2  filed on his behalf by family and loved ones that certainly
3  speak of a young man who's highly intelligent.  He has a high
4  degree of responsibility and ambition in that he's gotten
5  himself educated, was active in sports when he was in college,
6  has maintained consistent employment throughout his young life,
7  and had everything going for him in regards to not only
8  employment with the State but also self-employment.  So he's
9  certainly shown to the Court someone who is exemplary in his
10 work ethic and his ability to serve society in that regard and
11 create jobs.

12    I know he just mentioned the tragic loss of his mother
13 recently.  I spoke to his father this morning.  He is not in
14 good health, and up until his mother's passing, both of those
15 people, again, you know, looked upon Mr. Ayodele as a major
16 source of support in their lives.

17    The guideline range, Your Honor, has been adjusted in
18 regards to the Court's sustaining the objection, but I'd ask
19 the Court to consider the low end and/or a downward variance in
20 light of his exemplary behavior since he was in trouble in
21 2009.

22    On the 3553, Your Honor, I think when he was in
23 trouble before from the 2009 conviction, there was no
24 indication, no indicia whatsoever, that he did anything to
25 dishonor his probation requirements.  And, again, that was at

the age of 22 when he's had his own prior felony conviction. He's just shown exemplary reliability, good conduct, and work ethic. That speaks loudly for his integrity.

He mentioned briefly -- and I don't disagree with probation on the fact that there have been some minor usage of drugs, but he would be willing to enter into any substance abuse treatment program that the Court may deem appropriate.

Again, with -- you know, with that said and with the memo submitted, we're asking the Court for a downward departure. I don't think as it speaks -- from the time he was in trouble from the 2009 conviction until this problem here before the Court today, he had not been in trouble at all. So with the exception of that, he would have come before the Court with a Category I.

I would ask the Court to consider those remarks, and we'll submit it on that, Your Honor. Thank you.

**THE COURT:** Let the record also reflect that I have received several reference letters on his behalf, Mr. Ayodele's behalf, and I've also received the sentencing memorandum that Mr. Travis referenced, as well as the victim statement in this case from Mr. Cobbs.

I just trust, by way of explanation, that, attorneys, you can figure out that I'm kind of struggling with this case because I guess I was surprised, to be very candid, of the low criminal activity of all three of the defendants involved in

1  this case. Yet, at the same time, I found Mr. Cobbs's
2  testimony at trial, as well as his victim statement, to be
3  impactful, at his age doing a job that he loved and having done
4  it for years without anything like this happening, without any
5  injury, and then just these three individuals conspiring to
6  make this a bad day for Mr. Cobbs.
7        So I have tried to take all of that into
8  consideration. I don't necessarily think in any one of these
9  cases that the high end of the guidelines is appropriate. It
10 seems to the Court that something more than a minimum sentence
11 at the low end is justified in these -- in this case.
12       So, Mr. Ayodele, as I referenced and spoke with
13 Mr. Smith, the sentence that I am going to impose is
14 mid-guideline. It is, taking all of this into consideration,
15 what is an adequate sentence but not to put you at the high
16 end.
17       So having explained that, the Court adopts the
18 presentence investigation report without change.
19       The Court has previously sustained Objection Number 1
20 regarding the restraint enhancement.
21       No count of conviction carries a mandatory minimum
22 sentence.
23       The total offense level has been adjusted, based upon
24 sustaining the two-level enhancement objection, to 31 versus
25 33. That changes the guideline range in this case, 121 to

1 151 months. This defendant does have a criminal history
2 category of II, as compared to the other two defendants who
3 have a criminal history category of I. The supervised release
4 range, Count 1 carries a term up to 3 years; Count 2, a term up
5 to 5 years. And the fine range in this case, as modified, is
6 30,000 up to 300,000, but the Court understands that you do not
7 have the ability to pay a fine.
8       I'm going to remind you, Mr. Ayodele, that Count 1
9 carries a term of imprisonment up to 5 years. Count 2 carries
10 a term of imprisonment up to 25 years.
11       The sentence is within the guideline range, and the
12 difference between the maximum and minimum of the guideline
13 range exceeds 24 months, and the specific sentence is imposed
14 for these reasons.
15       There is restitution in this case. The total amount
16 of restitution is 61,331.88. I'll explain to you in a moment
17 how that breaks out between the postal department and
18 Mr. Cobbs.
19       In imposing sentence, the Court has considered the
20 advisory guideline range, the statutory penalties, and the
21 sentencing factors enumerated in 18 U.S.C., Section 3553(a)(2),
22 which set forth the need for the sentence imposed to reflect
23 the seriousness of the offense, promote respect for the law,
24 and provide just punishment; to afford adequate deterrence to
25 criminal conduct; to protect the public; and also to provide

1 the defendant with educational or vocational training, medical
2 care, or other correctional treatment; also to avoid
3 unwarranted sentencing disparities; and to provide restitution
4 to a victim.
5     The Court finds no reason to depart from the sentence
6 called for by the application of the guidelines inasmuch as the
7 facts as found are the kind contemplated by the sentencing
8 commission.
9     Pursuant to the Sentencing Reform Act, it is the
10 judgment of the Court, Mr. Ayodele, that you be committed to
11 the Bureau of Prisons to be imprisoned for a term of
12 136 months.  This consists of 60 months on Count 1 and
13 136 months on Count 2.  Again, that is mid-range sentence
14 guideline.  Those sentences are to be served concurrently.
15     On supervised release -- upon release, you'll be
16 placed on supervised release on Count 1 for a term of 3 years,
17 on Count 2 for a term of 5 years.  That is also to run
18 concurrently.
19     You should -- there are -- there is -- excuse me --
20 one mandatory condition on supervision.  That is, you must
21 cooperate in the collection of DNA as directed by your
22 probation officer.
23     And there are a number of standard conditions.  Those
24 were in your presentence report.  I know you probably reviewed
25 those with your attorney, but you'll forget those based upon

your period of incarceration.  So the probation officer will review those upon release.

The Court is imposing a number of special conditions.  You shall provide the probation officer with access to any requested financial information.  That is in order to ensure that the restitution gets paid back.

You shall not incur any new credit charges or open additional lines of credit without the approval of your probation officer.  Again, to ensure that restitution is paid.

You shall participate in a program of testing and treatment for substance abuse.  The details of that will be worked out by your probation officer, but you'll stay in that program for as long as your probation officer thinks that's necessary.

You shall not possess, ingest, or otherwise use marijuana or marijuana products unless that is prescribed by a licensed physician for a legitimate medical reason.

There is a search condition in your case.  You shall submit your person, property, house, residence, vehicle, papers, computers, electronic data storage devices, or your office to a search conducted by the United States Probation Officer.  That search would only take place from a reasonable -- at a reasonable time and in a reasonable manner.  However, whomever you're going to live with, you do need to notify them that you are subject to this search.

1  As I indicated earlier, the restitution amount that
2  you owe is 61,331.88. The amount that -- of that that is owed
3  to the postal service is 60,706. The amount of 625.88 is due
4  to Mr. Cobbs for some medical expenses. Those payments will
5  begin immediately.
6  After you are released from incarceration, if there is
7  a balance owing, then you will pay that beginning 60 days after
8  your date of release. And it will be 10 percent of your gross
9  monthly income or at least $100 per month.
10 Now, you're going to owe this amount of restitution in
11 conjunction with your other two codefendants -- jointly and
12 severally with the other two defendants.
13 No fine is being ordered in this case due to your
14 inability to pay, but you do owe the $200 to the court --
15 clerk's office. That is $100 per count for the special
16 assessment for a total of $200.
17 Now, at this time, Mr. Ayodele, I'm going to read you
18 your right to appeal. You have the right to appeal the verdict
19 and any sentence imposed illegally or as a result of a
20 miscalculation of the guidelines or a sentence that is outside
21 the guideline range or one that you feel is plainly
22 unreasonable.
23 If you are unable to pay for the cost of an appeal,
24 you may request that the Court waive those costs. If you're
25 unable to afford an attorney, the Court will appoint you an

1 attorney for purposes of appeal.

2 Do you understand the judgment?

3 **THE DEFENDANT:** Yes, Your Honor.

4 **THE COURT:** Do you have any questions?

5 **THE DEFENDANT:** No, Your Honor.

6 **THE COURT:** Any other matters, Mr. Travis?

7 **MR. TRAVIS:** If it please the Court, just to close
8 out, Your Honor, I would ask the Court to consider what -- if
9 it could suggest either Yazoo City, Mississippi, facility or
10 Forrest City, Arkansas.

11 Also, respectfully, for the record, on behalf of
12 Mr. Ayodele, we object to the reasonableness of the Court's
13 sentence today.

14 **THE COURT:** I understand the objection to the
15 reasonableness of the sentence. Also, the judgment can contain
16 a recommendation that you place -- be placed at one of those
17 two facilities.

18 Anything, Mr. Mims?

19 **MR. MIMS:** No, Your Honor.

20 **THE COURT:** Very well. You're remanded now to the
21 marshal service.

22 **MR. TRAVIS:** Thank you, Your Honor.

23 **THE COURT:** Thank you.

24 (CONCLUDED AT 3:15 P.M.)

25

# CERTIFICATE

I, Phyllis K. McLarty, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Mississippi, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing 13 pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Witness my hand, this 29th day of August, 2023.

/s/ Phyllis K. McLarty
PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
Federal Official Court Reporter